IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2007 AUG 28  PM 4: 28

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

PHILIP BRASFIELD, *et al.*,

               Plaintiffs,

-vs-                                                 Case No.  A-05-CA-1009-SS

RISSI L. OWENS, *et al.*,

               Defendants.

## O R D E R

BE IT REMEMBERED on the 21st day of June 2007, the Court called the above-styled cause for a hearing and counsel were present in the courtroom. Before the Court were Plaintiffs' Motion to Certify Class [#340], Defendants' Response thereto [#364], Defendants' Amended and Supplemental Motion to Dismiss Federal Claims in their Official Capacities [#345], and Plaintiffs' Response thereto [#348]. Having considered the Motions and Responses, the applicable law, and the case file as a whole, the Court enters the following opinion and orders.

### Background

Plaintiffs' live pleading is their Fourth Amended Complaint [#329] filed November 16, 2006. Plaintiffs are offenders who have been convicted of felonies and incarcerated in the Texas Department of Criminal Justice, and they seek class certification under Rule 23. Fourth Am. Compl. ¶ 11. Plaintiffs mount numerous constitutional challenges to the parole review system in Texas and contend the parole review process in Texas constitutes either a fraud or a mistake.

Defendants Rissi L. Owens, Jose Aliseda, Jr., Charles Aycock, Jackie DeNoyelles, Linda Garcia, Juanita M. Gonzalez, and Elvis Hightower are members of the Texas Board of Pardons and



Paroles (the "Parole Board"), and they are sued in their official capacities only.  Defendants Gerald

Garrett, Thomas G. Fordyce, Pamela D. Freeman, James Paul Kiel, Jr., James C. Poland, Lynn

Ruzicka, Edgar Morales, Charles Shipman, Charles C. Speier, and Howard A. Thrasher, Sr. are

Parole Commissioners, and they are sued in their official capacities only.

Defendant Christina Melton Crain is Chair of the Texas Board of Criminal Justice, Brad

Livingston is Executive Director of the Texas Department of Criminal Justice, Nathaniel Quarterman

is Director of the Correctional Institutions Division, Pamela Williams is Deputy Director for Support

Services for the Correctional Institutions Division, Rebecca Price is Assistant Director for

Classification and Records.  Crain, Livingston, Quarterman, Williams, and Price are referred to

collectively as "TDCJ,"and they are sued solely in their official capacities.

Plaintiffs specifically assert the following federal claims: violation of separation of powers;

violation of the Fifth Amendment Double Jeopardy Clause; violation of Article I, Section 10, the

Ex Post Facto Clause; violation of the Fourteenth Amendment Due Process Clause; and violation

of the Thirteenth Amendment prohibition of involuntary servitude.  Plaintiffs also assert numerous

state law claims.  Fourth Am. Compl. ¶ 169–207.  Plaintiffs seek declaratory relief and injunctive

relief.[1]

## Analysis

## I.    Plaintiffs' Motion to Certify Class [#340]

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

A court may certify a class under Federal Rule of Civil Procedure 23 only if the proposed class meets

---

[1] Plaintiffs also state that upon a favorable ruling on one or more of their constitutional claims, they will seek to engage this Court to adjudicate a second class action involving habeas corpus remedies.

all the requirements of section (a) and at least one prong of section (b).  Plaintiffs have not met all

of the requirements of Rule 23(a) as discussed below.

Plaintiffs seek to bring this case as a class action under Federal Rule of Civil Procedure 23(a)

and (b)(2), and they propose two classes with two subclasses.  The common denominator applicable

to all Plaintiffs is they are subject to the Texas Parole Board's discretion.

The proposed definition of Class One is:

All current and future Texas inmates presently incarcerated for an indeterminate
sentence which necessarily requires the granting of a parole if an inmate is to be
released prior to serving their maximum sentence day for day (i.e. calendar time).

Under this broad class, Plaintiffs ask for the creation of two subclasses:

(1)  The first subclass, termed the *active class*, shall consist of all Named
Plaintiffs (i.e. representative clients) that have financially supported this litigation
through payment of a moderate legal fee (i.e. $400).  Counsel for the class will
maintain this list of active class members and keep opposing counsel abreast of new
additions periodically or as requested.

(2)  The second subclass, termed the *dormant class*, shall consist of all
remaining incarcerated Texas inmates eligible for parole, excluding of course those
inmates exercising their prerogative to opt out of the class.

Motion for Class Cert. Memo. at 2.

The proposed definition of Class Two is:

All currently and future paroled Texas inmates subject to the supervision of these
Defendants whose right to remain in free society is subject to their discretion, plus
all incarcerated Texas inmates serving time for technical violations occurring while
on parole or probation, whose release necessarily requires the granting of a new
parole if an inmate is to be released prior to serving their maximum sentence in
calendar time.

Under this broad class, Plaintiffs request the following subclasses:

(1) The first subclass, termed the active class, shall consist of all similarly
situated Texas inmates that have financially supported this litigation through payment

of a $400 fee. Counsel for the class will maintain this list of active class 2 members and keep opposing counsel abreast of additions periodically or as requested.

(2) The second subclass, termed the dormant class, shall consist of all former Texas inmates that cannot financially support the maintenance of this litigation. All remaining Texas inmates shall fall into this class by default, excluding of course those paroled inmates exercising their prerogative to opt out of the class.

*Id.* at 2.

### A.    Rule 23(a)

Under Rule 23(a), the party seeking class certification must show: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). The party seeking certification has the burden of proof on Rule 23's requirements. *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003). "The district court has wide discretion in deciding whether or not to certify a proposed class." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471–72 (5th Cir. 1986).

"Although 'the strength of a plaintiff's claim should not affect the certification decision,' it is necessary for the district court to go beyond the pleadings to determine whether the requirements of Rule 23 have been met: 'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)). The Court must also consider "how a trial on the merits would be conducted" if the class was certified. *Castano*, 84 F.3d at 740.

## I.      Numerosity

To establish numerosity for purposes of Rule 23(a), it is not necessary to demonstrate the number of persons in the class with absolute precision where reasonable estimates show the class is numerous and geographically dispersed. *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Abrams v. Kelsey-Seybold Med. Group, Inc.*, 178 F.R.D. 116, 128 (S.D. Tex. 1997)). Plaintiffs must demonstrate that the class is "so numerous that joinder of all members is impracticable." *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). The threshold question is generally the practicability of joinder, which depends on the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion. *Id.*

Plaintiffs have shown the class is so numerous that joinder of all members is impracticable. Plaintiffs estimate there are 168,105 incarcerated members in the first class and 428,773 members in the second class. Fourth Am. Compl. at 6. Defendants respond that the number of members in proposed Class One is actually less than 2,500 prisoners because Class One only seeks to include persons incarcerated for "indeterminate sentences." Under either set of numbers, however, the Court finds the proposed class meets the numerosity requirement particularly because joinder of all members of Classes One and Two is impracticable due to the constant turnover in the prison and parolee populations and the administrative difficulties attendant to making service on populations, such as inmates, who may frequently be moved from one prison to another.

## ii.      Commonality

The second prerequisite refers to shared issues of law and fact. The commonality requirement is not a high burden. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296–97

(5th Cir. 2001). "It does not require a showing that the interests and claims of class members are identical, but only that 'there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Cash Today*, 199 F.R.D. at 569 (quoting *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)). Although Plaintiffs have raised several legal questions common to a number of putative class members,[2] each class member has his own unique facts and circumstances. As explained below, the resolution of the issues raised in this case is extremely impractical in the context of a class action, and Plaintiffs have not met their burden of showing commonality under Rule 23(a). *See Stewart v. Winter*, 669 F.2d 328, 336–37 (5th Cir. 1982) (upholding denial of class certification because common questions of law or fact were not present in case challenging physical and environmental conditions at various county jails).

### iii.   Typicality

This prong of Rule 23(a) "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn*, 118 F.3d at 426 (citing *Flanagan v. Ahearn (In re Asbestos Litig.)*, 90 F.3d 963, 976 (5th Cir.1996)). One purpose of the typicality requirement is to ensure that the representative's interest is "aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 599 (E.D. La. 2002).

Even though there are common issues of law and fact present in this case, it is quite apparent that no named plaintiff can represent the position of any other class member because the factual position in each case is so different—each class member seeking release on parole has a different

---

[2] Fourth Am. Compl. at 8–9 (listing eight questions common to the class).

history, conviction, and so on, and each parole violator has a different story and reason for being revoked. Because no named Plaintiff or even group of named Plaintiffs can represent the positions of other class members with regard to the parole consideration and revocation process, the typicality requirement is not met in this case. "The factual questions inherent in making a parole decision . . . involve too many individual case variations to be the proper subject of a class action." *Geraghty v. United States Parole Comm'n.*, 719 F.2d 1199, 1205 (3d Cir. 1983) (citing *Locicero v. Day*, 518 F.2d 783, 785 (6th Cir. 1975)). Any named plaintiff could not advance the interests of the class members because Defendants would have an individual defense with regard to each Plaintiff and each factual circumstance regarding why mandatory supervision or parole was not granted or was revoked.

This Court has received a number of letters and motions from various prisoners asserting that the interests of the Named Plaintiffs do not represent their interests. *See, e.g.*, Docket Entries [# 264, 269, 303, 304, 308, 310, 334, 335]. Some of these motions and letters have requested permission to opt out of the putative class even though no class has yet been certified. Others request to be a named party or intervenor in order to raise the legal and factual issues relating to their own personal circumstances. Others object to the Named Plaintiffs or their counsel for an assortment of reasons. In fact, this case and this Order have been delayed substantially by the multitude of individual filings and attempts at interlocutory appeals, making it virtually impossible for the Court to proceed. These letters and motions bolster the Court's conclusion that the interests of Named Plaintiffs are not typical of all members of the proposed classes.

At the June 21, 2007 hearing, the Court inquired of Plaintiffs' counsel what specific remedies he was seeking in this case. Counsel stated he wanted the Court to: (1) require the parole board to

give serious consideration for release for every parole eligible candidate; (2) change the parole decision form to add the date the crime occurred, the legislation in force at the time of conviction regarding the penalty applicable, the reason for any parole denial and a factual basis supporting the reason, signed by the parole decisionmaker, and listing the members of the panel; (3) provide a broader avenue for appealing the denial of parole; (4) require that more sincere attention be paid when mandatory supervision release is denied and that more than a mere parroting of the statutory language be provided; (5) prohibit the Parole Board from going beyond the affirmative findings of a court with regard to the type of offense committed; and (6) enjoin the use of halfway houses on mandatory supervision.  Examination of these requested remedies further illuminates the fact that no named plaintiff can pursue and advance the interests of class members because each inmate or paroled inmate is uniquely situated when it comes to the type of parole review they receive, the crime of which they are convicted, their behavior and circumstances leading up to review, and the reasons for any denial of parole or release to mandatory supervision or revocation.

Each Plaintiff is injured, if at all, in a unique or individual manner, and these claims appear to be far more appropriate for individual treatment, in which the facts and circumstances of each inmate can be developed and the constitutional framework applied to specific fact scenarios. *See, e.g.*, *LoCicero*, 518 F.2d at 785 ("There are many facts that enter into the consideration of whether or not an individual prisoner is entitled to parole. . . . Assuming arguendo, that the appellant could establish . . . his right to parole, this would not mean that all members of the alleged class . . . would also be entitled to release on parole.").  Even considering the option of subclasses, there is still no typical named plaintiff who could advance the interests of all subclass members.  For the reasons set forth above, the Court finds Plaintiffs have not met their burden of showing typicality.

iv.      **Fair and Adequate Representation**

Because class actions adjudicate the rights of absent class members, due process requires the proposed class representatives to establish that the named plaintiffs and their counsel will adequately and fairly represent the interests of those absent individuals. FED. R. CIV. P. 23(a). In determining whether a plaintiff-representative can satisfy this requirement, courts have focused on whether the plaintiff-representative's interests are coextensive with those of the class. *Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993). Specifically, the Court must examine whether there is a sufficient nexus between the representative's and the class's interests to ensure vigorous prosecution of the action, whether the representative's interests are antagonistic to those of the class, and whether there is adequate financial support from the representative for the litigation. *Id.* (citing *In Re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 417 (M.D. La. 1980)). "Special attention must be given to the issue of representativeness because . . . [its] requisites flow from the demands of due process." *Id.* (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).

The Court finds Plaintiffs have not met this standard because the proposed class representatives, who have not even been named to date, do not have interests coextensive with the class.[3] When Plaintiffs cannot even choose designees for the class and/or subclass representatives, the Court finds their allegation that all active Plaintiffs, who have paid a fee to Plaintiffs' counsel, are representative of all unnamed class members to be wholly incredible. The very fact that Plaintiffs do not request that any one or more specific plaintiffs be designated as a plaintiff-

---

[3] With regard to adequate counsel, Plaintiffs' counsel Norman Sirak has shown himself to date to be willing and able to vigorously prosecute this action; however, this does not affect or cure the problems with regard to adequacy of class representatives.

representative for this lawsuit indicates that there is no "typical" Plaintiff and that one or even a few

Plaintiffs cannot fairly and adequately represent the interests of all class members.

For example, the named plaintiff in this suit, Phillip Brasfield, cannot adequately represent

the interests of either proposed class because he is serving an indeterminate life sentence, under

which he will never be factually eligible for mandatory supervision because his calendar time and

his good time will never add up to life. *See Arnold v. Cockrell*, 306 F.3d 277 (5th Cir. 2002).

Neither is Brasfield a current parolee, nor an inmate who has been incarcerated after a technical

parole violation. Further, it is entirely speculative as to whether Brasfield will ever be a future

parolee. Accordingly, Brasfield is not an appropriate class representative because his situation is

inherently unique and different from other class members and because he cannot seek the same

declaratory and injunctive relief as other proposed class members.

Finally, the Court has substantial doubts with regard to Plaintiffs' ability to provide the

financial resources necessary to adequately represent the proposed classes. To date, the Court

understands that each of the "active Plaintiffs" have paid Plaintiffs' counsel $400.00 to be an active

member of this lawsuit; however, the Court is unaware how much of this fund has already been spent

in litigating this case to date and whether there will be any additional payments to cover the costs

and expenses arising from this proposed class action in the future.

The Court is not at all impressed with Plaintiffs' argument that few Plaintiffs would be able

to file and litigate individual cases to redress the challenged parole actions because most of them are

indigent. This is exactly what 28 U.S.C. § 1915, the *in forma pauperis* statute, is designed to

remedy.

Simply put, Plaintiffs have not established that the representative plaintiffs will adequately and fairly represent the interests of absent class members.

**B.      Rule 23(b)**

Having determined Plaintiffs have not demonstrated that each prong of Rule 23(a) is met, the Court need not reach the question of whether or not Rule 23(b) is met.

**II.      Defendants' Amended and Supplemental Motion to Dismiss Federal Claims in their Official Capacities [#345]**

Defendants move under Rule 12(b)(6) to dismiss Plaintiffs' federal claims for failure to state a claim upon which relief may be granted. In deciding whether to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the Court must take the factual allegations as true, resolving any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). A court should then dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The plaintiff is only required to give a short and plain statement of his claim that gives his opponent fair notice of what his claim is and the grounds on which it rests. *Id.* at 47.

Although generally disfavored, a dismissal pursuant to Rule 12(b)(6) is sometimes appropriate. Even under the liberal pleading standard set forth by Rule 12(b)(6), the Court may not assume that the plaintiff can prove facts that he has not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Moreover, dismissal is appropriate where the complaint is devoid of facts to establish any one of the required elements of the claim asserted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

A.    **Separation of Powers**

Defendants move to dismiss Plaintiffs' separation of powers claims.  Under the separation

of powers doctrine, certain powers are reserved exclusively to the Legislative, Executive, and

Judicial branches of government.  A separation of powers violation occurs when one branch of

government usurps authority exclusively entrusted to another branch of government. Plaintiffs assert

the separation of powers doctrine is violated when the executive branch (Defendants) alter the

unambiguous terms of judiciary-issued sentences, such as when Plaintiffs, after having parole

revoked, are not credited with having served the part of their sentence while they were released on

parole or when Plaintiffs are not credited with time spent in an Intermediate Sanction Facility.

Fourth Am. Compl. ¶ 85.  Plaintiffs also claim that for crimes enumerated under § 3(g) of Article

42.12 of the Texas Code of Criminal Procedure,[4] the parole board denies parole based on findings

not made by a jury.  *Id.* ¶ 94.  Third, Plaintiffs claim the separation of powers doctrine is violated

because Defendants have a practice of cancelling good conduct time credits just before an offender

leaves prison, in contradiction of court's declarations to juries regarding good time credits and the

possibility of early release.  *Id.* ¶ 104.

Defendants move to dismiss Plaintiffs' separation of powers claims because there is no

mandatory federal separation of powers doctrine applicable against the states; thus, Plaintiffs have

failed to state a constitutional claim against Defendants. *See Sweezy v. State of New Hampshire*, 354

U.S. 234, 255 (1957) ("[T]his Court has held that the concept of separation of powers embodied in

---

[4]  The enumerated crimes include murder, capital murder, indecency with a child, aggravated
kidnapping, aggravated sexual assault, aggravated robbery, sexual assault, possessing a deadly weapon in
connection with a felony or flight from a felony, and certain repeated violations of the Health and Safety
code.  TEX. CODE. CRIM. PRO., Art. 42.12, § 3g.

the United States Constitution is not mandatory in state governments.") (citing *Dreyer v. People of State of Illinois*, 187 U.S. 71 (1902)); *see also Int'l Brotherhood of Teamsters v. Hanke*, 339 U.S. 470, 479 (1950) ("The Fourteenth Amendment leaves the States free to distribute the powers of government as they will between their legislative and judicial branches."). It is for the state to determine whether and to what extent its powers shall be kept separate between the three branches of state government. *See Dreyer*, 187 U.S. at 84 ("Whether the legislative, executive, and judicial powers of a state shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the state.").

Plaintiffs have failed to state a viable constitutional claim for a federal separation of powers violation against Defendants, and the Court grants Defendants' motion to dismiss in this respect. Plaintiffs have not pleaded that any branch of the federal government was infringing upon the authority of another branch of federal government; thus, Plaintiffs have not pleaded a cause of action under the federal separation of powers doctrine.[5]

**B.     Double Jeopardy**

The double jeopardy clause provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V.  Plaintiffs claim Defendants' refusal to give parolees credit toward their sentences for time served while in a "halfway house" if parole is later revoked violates the double jeopardy clause because it effectively forces such inmates to serve part of their sentence twice. Fourth Am. Compl ¶ 116.

---

[5] This ruling does not apply to any state separation of powers claim Plaintiffs may have asserted under the Texas Constitution.

Defendants move to dismiss Plaintiffs' double jeopardy claims because the refusal to give a parolee credit toward his sentence for the time served while on parole is not a violation of double jeopardy under Fifth Circuit law. *See Morrison v. Johnson*, 106 F.3d 127, 129 n.1 (5th Cir. 1997) (holding that requiring a revoked parolee to serve the entire portion remaining on his sentence without credit for the time from his release date until his revocation date did not violate the Double Jeopardy Clause) (citing *Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46–47 (5th Cir. 1991)); *see also Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001) (holding that the federal and Texas statutes allowing the denial of street time credit after revocation of parole "do not raise constitutional concerns."). Under these cases, Plaintiffs have failed to state a double jeopardy claim upon which relief may be granted, and Defendants' motion to dismiss is granted in this respect.

Plaintiffs respond that halfway houses are in fact prisons, so time served in a "halfway house" must be credited as time incarcerated, not street time. Street time on parole, whether served in a halfway house or elsewhere, is factually and practically an opportunity for an inmate to serve less time in the penitentiary than his maximum sentence. Plaintiffs focus exclusively on what happens when parole is revoked and not at all on what happens when parole is successfully completed. If Plaintiffs truly believe halfway houses are as restrictive as prisons, then they could request that they not be granted parole to a halfway house but instead be allowed to complete their sentence in prison. Because it is clear that no Plaintiff spends more time actually incarcerated than his or her full sentence, Plaintiffs have not stated any claim for a violation of the double jeopardy clause.

## C.    Ex Post Facto Clause

Article I, Section 10 of the United States Constitution provides, "no State . . . shall pass any . . . ex post facto law." U.S. CONST. art. I, § 10. The Ex Post Facto Clause "protects liberty by

-14-

preventing governments from enacting statutes with 'manifestly *unjust and oppressive*' retroactive effects." *Stogner v. California*, 539 U.S. 607, 611 (2003) (quoting *Calder v. Bull*, 3 Dall. 386, 291 (1798)).

Plaintiffs complain Defendants have a practice of refusing to meaningfully consider offenders convicted of certain crimes[6] for parole upon their first eligibility and waiting until after subsequent parole review hearings to make a determination to release such inmates. Fourth Am. Compl. ¶¶ 125–26. Plaintiffs also claim a violation based on a legislative amendment that made the granting of parole for certain crimes dependent upon securing votes from two-thirds of the entire membership of the Board, rather than two out of three panel members. *Id.* at ¶ 127. Plaintiffs argue this legislation makes it more difficult for such inmates to obtain parole. *Id.* Plaintiffs also challenge the enlargement of time between parole reviews; the current law gives the Parole Board authority to issue a set off between parole reviews of between one to five years. *Id.* at ¶ 128.

Defendants seek to dismiss all of Plaintiffs' ex post facto claims. First, with regard to Plaintiffs' claim that the Parole Board delays the exercise of its discretion by failing to meaningfully consider offenders convicted of certain crimes for parole upon their first eligibility, Plaintiffs have not stated an ex post facto claim because they do not, and cannot, claim that the timing of their initial parole eligibility review has changed since they were convicted. *Id.* at ¶¶ 117–26; *see Garner v. Jones*, 529 U.S. 244, 249–50 (2000) (holding that a law retroactively reducing the frequency of parole reconsideration hearings did not violate the Ex Post Facto Clause).

Plaintiffs have failed to state a claim for relief with regard to votes requiring two-thirds of the entire Parole Board because they have not alleged the procedure was applied retroactively to any

---

[6] Namely, murder, Section 3(g) crimes, sex offenses, and crimes against children.

inmate. Several courts in this circuit have dismissed ex post facto claims challenging the two-thirds voting requirement of § 508.046. *See Goodwin v. Dretke*, 150 F. App'x 295 (5th Cir. 2005) (denying habeas relief because state court's determination that prisoner was not entitled to habeas relief based on parole board voting requirements was a reasonable application of federal law); *Aldaco v. Quarterman*, 185 F. App'x 358, 359 (5th Cir. 2000) (same); *Goodrich v. Livingston*, No. G-06-156, 2007 WL 128308 (S.D. Tex. Jan. 10, 2007) (dismissing as frivolous § 1983 plaintiff's claim that § 508.046 violated the Ex Post Facto Clause); *Brooks v. Dretke*, No. C.A.C-04-198, 2005 WL1745456 (S.D. Tex. July 22, 2005) (change in size of parole eligibility panel did not violate either Ex Post Facto or Due Process clause). Plaintiffs have not stated a claim for a violation of the ex post facto clause with regard to the two-thirds voting requirement and such claim is dismissed.

Plaintiffs also claim that current parole law which provides for between one to five year set-offs of parole reviews violates the ex post facto clause with regard to inmates sentenced under the 65th and 70th Legislature, at which time parole review was scheduled annually. *See* Fourth Am. Compl. ¶¶ 128–34. Currently, an inmate, who has previously been denied release on parole, may receive anywhere between a one-year and a five-year set off. TEX. GOVT. CODE § 508.141(g). The United States Supreme Court held in *Garner v. Jones* that increases in the minimum number of years between parole decision reconsideration did not violate the ex post facto clause, where they did not modify the statutory punishment imposed or the standards for determining the criteria for, or initial date of, parole eligibility. 529 U.S. at 250–57.

As in *Garner*, Section 508.141(g) does not modify the statutory punishment imposed or the standards for determining the criteria for, or the initial date of, parole eligibility. The statute does not modify or substantially alter any Plaintiffs' sentence, and the Parole Board retains discretion with

-16-

regard to the frequency of reconsideration. *See* TEX. GOVT. CODE § 508.141(g); 37 TEX. ADMIN. CODE § 145.12(2). Thus, Plaintiffs have not stated a violation of the Ex Post Facto Clause with regard to parole reconsideration set offs, and Defendants' motion to dismiss is granted. *See California Dept. of Corrections. v. Morales*, 514 U.S. 499, 509–14 (1995) (holding that California legislation that allowed Parole Board to defer parole hearings so that they occurred less frequently did not violate the ex post facto clause because the legislation created only the most speculative and attenuated risk of increasing the measure of punishment attached to certain crimes); *Allison,* 66 F.3d at 74–75 (5th Cir. 1995) (upholding dismissal of ex post facto claim relating to annual parole review because the current law was consistent with the statutory requirements in place at the time the plaintiff was convicted).

### D.    Due Process

The United States Constitution does not create a liberty interest in parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Likewise, Texas law makes parole discretionary and does not create a liberty interest in parole that is protected by the Due Process Clause. *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995); *see also Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Because Texas inmates have no protected liberty interest in parole, they cannot have a liberty interest in parole consideration or other aspects of parole procedures. *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) (stating that Texas prisoners cannot mount a challenge against any state parole review procedure on procedural or substantive due process grounds). It is entirely up to each State whether it chooses to create a parole system and the amount of discretion with which it entrusts its parole decisionmakers. Texas's discretionary mandatory supervision law, in and of itself, is not a violation of due process.

-17-

Parole is a privilege, not a right, even after an inmate accrues the minimum amount of time-served credit necessary to be eligible for parole. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (convicted persons have no constitutional right to be conditionally released before the expiration of a valid sentence); 37 Tex. Admin. Code § 145.3(1) ("Release to parole is a privilege, not an offender right, and the parole decision maker is vested with complete discretion to grant, or to deny parole release as defined by statutory law."). An inmate who has met the minimum requirement for time served under the applicable parole eligibility statute is not automatically entitled to be released on parole; rather, he is only entitled to a review to determine whether or not he will be released on parole. *See* 37 Tex. Admin. Code § 145.3(1) ("[T]he parole decision maker is vested with *complete discretion* to grant, or to deny parole release. . . .") (emphasis added); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (because a prisoner has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions). Regardless of when and how often inmates seek parole review, they are never kept in prison beyond their maximum sentence date.

Plaintiffs claim Texas Government Code § 508.147 creates a liberty interest in mandatory supervision and Defendants have a practice and procedure of arbitrarily denying inmates mandatory supervision by giving cursory, insincere attention to the decision whether to release inmates on mandatory supervision. Section 508.147 provides that "[e]xcept as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Tex. Gov't. Code § 508.147(a). Section 508.149 governs inmates ineligible for mandatory supervision and lists a number of reasons, including certain

-18-

offenses; inmates whose accrued good conduct time is determined by a parole panel not to be an accurate reflection of their potential for rehabilitation; and inmates whose release would endanger the public. *Id.* § 508.149.

Nowhere does the statute require a certain level of attention or time be spent by the parole panel in making its decision; the only thing the statute requires is, if the parole panel determines not to release an inmate under § 508.149(b), it shall "specify in writing the reasons for the determination." *Id.* Plaintiffs do not claim parole panels are not specifying in writing their reasons for denying release to mandatory supervision; rather, they complain their written explanations merely parrot the statutory language and/or relate to unchanging characteristics, such as the nature of their crime. Plaintiffs are simply not entitled to what they seek under the controlling Texas statutes.

To the extent Plaintiffs complain they have no avenue to appeal denials of release to mandatory supervision, they are not entitled to any appeal, as the statute specifically does not provide for appeals. TEX. GOV'T. CODE § 508.149(d) ("A determination under Subsection (b) is not subject to administrative or judicial review, except that the parole panel making the determination shall reconsider the inmate for release to mandatory supervision at least twice during the two years after the date of the determination.").

Finally, Plaintiffs claim parolees facing revocation suffer prolonged confinement because of timing issues in holding preliminary and revocation hearings in violation of their due process rights. It is true that parole revocation proceedings must satisfy the minimum requirements of due process including "some minimal inquiry . . . at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972). Mere unreasonable delay in

providing the preliminary hearing does not constitute a per se violation of due process; a parolee must demonstrate "actual prejudice" caused by the unreasonable delay. *Villareal v. United States Parole Comm'n.*, 985 F.2d 835, 837–38 (5th Cir. 1993). Plaintiffs have failed to state a claim because they have not alleged they were in fact prejudiced by the alleged delays in the holding of their preliminary and/or final parole revocation hearings. If one or more of the Plaintiffs believes he was denied the due process to which he is entitled during the parole revocation process, the proper relief to pursue is an individual writ of habeas corpus, as such a parolee would be alleging he was suffering an unconstitutional imprisonment caused by actions whose unlawfulness would render his revocation invalid.

Plaintiffs simply have not stated any claim that rises to the level of a constitutional violation regarding due process in the mandatory supervision context.

### E.    Involuntary Servitude

The Thirteenth Amendment to the United States Constitution provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII. Plaintiffs assert they are being subjected to involuntary servitude when they are released to mandatory supervision to "halfway houses." Plaintiffs claim these halfway houses are really prisons with work release privileges, and, when they are released under mandatory supervision to such "halfway houses," they are actually still incarcerated for their crime beyond the

time authorized by their judges; therefore, they are subjected to peonage[7] in violation of the Thirteenth Amendment. Pls.' Fourth Am. Compl. ¶¶ 165–68.

Defendants move to dismiss this claim because a parole panel may impose as a condition of mandatory supervision any condition that a court may impose on a defendant placed on community supervision under Texas Code of Criminal Procedure Article 42.12. *See* TEX. GOV'T CODE § 508.221. A court may require as a condition of community supervision that a defendant serve time in a community corrections facility such as a halfway house. *See* TEX. CRIM. PROC. CODE arts. 42.11, 42.12, 42.18. Confinement of an inmate, such as a sex offender, at a halfway house, as a condition to release on mandatory supervision, is not qualitatively different from conditions authorized by statute and characteristically imposed on many other convicted sex offenders placed on mandatory supervision. *See Ex Parte McCurry*, 175 S.W.3d 784, 785 (Tex. Crim. App. 2005). Stringent conditions of mandatory supervision for sex offenders have been held constitutional as long as they are provided their due process rights. *Id., Coleman v Dretke,* 409 F.3d 665 (5th Cir. 2005). A plain reading of the Thirteenth Amendment also shows it does not apply to convicted criminals serving punishments for their crimes. The Court finds Plaintiffs have failed to state a claim under the Thirteenth Amendment for involuntary servitude and Defendants are entitled to dismissal of this claim as a matter of law.

**F.      Injunctive Relief**

Having determined Plaintiffs have failed to state any claim for relief under § 1983, the Court finds they are not entitled to any prospective injunctive relief.

---

[7] Plaintiffs define "peonage" as compulsory service to work off an invalid, illegal, or unenforceable debt or obligation owed to a master. Pls.' Fourth Am. Compl. ¶165.

### G.     State Law Claims

Plaintiffs have also claimed numerous violations of state law.  A district court has supplemental jurisdiction over state law claims that are part of the same case or controversy as the cause of action over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  However, if a court dismisses the claims over which it had original jurisdiction, it should decline to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c) ("A court may decline to exercise pendant jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").  In this case, the Court's jurisdiction rested on 42 U.S.C. § 1983, and the Court has concluded these claims should be dismissed.  Thus, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are dismissed without prejudice.

### Conclusion

In accordance with the foregoing:

IT IS ORDERED that Plaintiffs' Motion to Certify Class [#340] is DENIED;

IT IS FURTHER ORDERED that Defendants' Amended and Supplemental Motion to Dismiss Federal Claims in their Official Capacities [#345] is GRANTED.  Plaintiffs' Federal Claims under § 1983 and Plaintiffs' state law claims are dismissed without prejudice; and

IT IS FINALLY ORDERED that all remaining pending motions are DISMISSED AS MOOT.

SIGNED this the _28th_ day of August 2007.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE